UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SHEILA M. DOOHAN EARHART**, | Civil Case No. 6:14-CV-01049-KI |
| Plaintiff, | |
| | OPINION AND ORDER |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | |
| Defendant. | |

      Max Rae
      P. O. Box 7790
      Salem, Oregon  97303

          Attorney for Plaintiff

      S. Amanda Marshall
      United States Attorney
      District of Oregon

Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Thomas M. Elsberry
Special Assistant Untied States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorney for Defendant

KING, Judge:

Plaintiff Sheila M. Doohan Earhart brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I reverse the decision of the Commissioner and remand for a finding of disability.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the Administrative Law Judge ("ALJ"). The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746.  The claimant is entitled to disability benefits only if he is unable to perform other work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ found Earhart has severe impairments of degenerative disc disease, obesity, right shoulder rotator cuff tear post repair, fibromyalgia, depression, and anxiety.  The ALJ also found that these impairments, either singly or in combination, are not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P,

Appendix 1. After reviewing the record, the ALJ concluded Earhart has the residual functional capacity to perform light work except she can only occasionally climb ladders, ropes and scaffolds, crawl, and reach overhead; she can frequently climb ramps and stairs, balance, stoop, kneel, and crouch; she should avoid concentrated exposure to vibration; she is able to perform unskilled work and routine tasks; and she is able to have superficial interaction with the general public. Based on vocational expert testimony, the ALJ found that prior to September 1, 2011, Earhart could work as an office helper and clerical collator and, thus, is not disabled under the Act. As of September 1, 2011, however, the ALJ changed Earhart's age category from "closely approaching advanced age" to "advanced age." With the change in age category, Medical Vocational Rule 202.06 directed a finding of disabled. The ALJ found Earhart became disabled on September 1, 2011 and remained disabled through the date of his decision. Earhart challenges the conclusion she was not disabled between April 14, 2009 and September 1, 2011.

## FACTS

Earhart alleges she became disabled on April 14, 2009, when she was 52 years old, due to fibromyalgia pain, fatigue, and mental impairments. She has an associate degree in criminal justice and a certificate in paralegal studies. Earhart most recently held several administrative jobs for the Oregon judicial department, and worked earlier as an airline reservations agent and a legislative office administrative assistant. She had three different jobs for the Oregon judicial department. Because of her worsening symptoms, each succeeding job had less demanding duties and fewer hours per week.

When Earhart was still working, she had a panic attack nearly every day. After she stopping working in 2009, the frequency decreased to about once a week, usually precipitated by

anticipation of a social situation. She often has to cancel plans to leave home because of panic attacks. The depression causes Earhart to feel like she is in a situation with no hope. She claims to have no focus and must re-read passages multiple times. Her cognitive problems caused Earhart to switch from reading books to reading magazines. Earhart's husband took over bill-paying for the family because she was making too many mistakes. At the time of the hearing, she was seeing a psychologist once a week and taking medication.

Earhart complains of constant aching, stabbing, stinging, cramping pain throughout her body when sitting, lying down, or walking. She has trouble holding things without dropping them. Earhart has no pain one or two days a month.

Earhart's husband does most of the cooking, laundry, shopping, and cleaning. Earhart spends her day by reading, keeping in touch with friends by email, talking to family on the phone, eating dinner with her husband and watching television with him. She does some cleaning in short bursts, resting in between. She belongs to weekly Bible study and art groups but only attends each about once every six weeks because of pain and exhaustion. Earhart tries to attend church every week but had missed four out of the last six weeks prior to the hearing. Once or twice a week she is in too much pain to shower. Earhart naps at least twice a day to deal with severe fatigue.

## DISCUSSION

I.    <u>Lay Testimony</u>

Earhart's husband filled out a Function Report on December 10, 2009 stating that Earhart's typical day included watching television, eating meals, talking with her husband, taking one or two naps a day, and occasionally going to a doctor's appointment. The husband reported

he does the shopping, cooking, cleaning, and laundry; any tasks Earhart attempts take her twice the usual time to complete.  At the hearing on June 27, 2012, the husband testified that his wife had deteriorated quite a bit in the last few years, to the point he retired as a police officer to help around the house.  The husband observed concentration and memory problems in Earhart.  He often has to remind Earhart to do something, such as write out a grocery list, two or three times.  Earhart's memory problems had increased to the point she forgets things the couple had discussed at length; at times she has trouble comprehending what her husband is saying.  She cannot not maintain any reasonable pace when trying to work around the house and must rest for extended periods afterwards.  Earhart is very fatigued, she no longer likes to go out and socialize, and they often have to cancel activities because Earhart has a panic attack beforehand.

       The ALJ concluded the husband's testimony generally supports Earhart's allegations but does not establish she is disabled because:  (1) the accuracy of the husband's report is questionable because he is not medically trained to make the exacting observations; (2) the husband is not a disinterested third party witness; and (3) the husband's report is not consistent with the preponderance of the opinions and observations by medical doctors.

       Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  Molina, 674 F.3d at 1114.  The germane reasons must be specific.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).  But the ALJ cannot discredit lay testimony because it is not supported by, or corroborated by, medical evidence in the record.  Bruce, 557 F.3d at 1116.

Page 7 - OPINION AND ORDER

Earhart contends the ALJ erred in rejecting her husband's lay testimony. She argues her husband's relationship to her and his lack of medical training cannot be the basis to reject his observations. The Commissioner concedes these reasons are problematic but argues the ALJ also reasoned that the husband's allegations were inconsistent with the medical record, a legitimate reason. I agree the ALJ's reasons based on the husband's relationship to Earhart and his lack of medical training are not legally viable, and I will ignore them. Bruce, 557 F.3d at 1116 (cannot discredit a wife's testimony because of her bias and lack of medical training).

The ALJ also reasoned that the husband's testimony was inconsistent with the preponderance of the medical record. The ALJ may reject lay witness testimony if it conflicts with medical evidence but cannot reject the testimony because it is not supported by medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (may reject lay testimony for conflict with medical evidence); Bruce, 557 F.3d at 1116 (ALJ cannot discredit lay testimony as not supported by medical evidence because SSR 88-13 directs the ALJ to consider lay testimony when the claimant's alleged symptoms are unsupported by medical records).

The time at issue spans from Earhart's alleged disability onset date of April 14, 2009 until September 1, 2011, the date the ALJ found Earhart's disability began. During this period, Earhart had shoulder surgery to repair a torn rotator cuff, but the surgery was successful and her shoulder issues are not a cause of her disability. In March 2010, Dr. Clements performed a physical consultative examination and found Earhart could work with certain limitations. The state agency medical consultants opined in June and November 2010 that Earhart could perform light work with some limitations.

Psychologist Dr. Paul Stoltzfus performed a psychodiagnostic evaluation of Earhart on March 9, 2010. He diagnosed her with major depressive disorder in partial remission and panic disorder, mild, but put no limitations on her employment. The state agency psychological consultants opined in March and October 2010 that Earhart could work with limited public contact on simple tasks and routines.

Earhart had a psychiatric evaluation at Kaiser on December 14, 2009 for her complaints of depression, anxiety, and insomnia. Her mother had just been diagnosed with cancer. Earhart completed an anxiety inventory and a depression checklist; they indicated Earhart suffered from extreme anxiety and severe depression. She reported excessive weight gain over the last six years, exhaustion, problems with energy and motivation, panic attacks, considerable difficulty with concentration and memory, feelings of guilt and worthlessness, social withdrawal, but no suicidal ideation. Prior to the visit, Earhart was already prescribed Xanax, Wellbutrin, Lexapro, and amitriptyline and had unsuccessfully tried several other antidepressants. She began attending an eating disorder group.

Earhart changed to the Providence Medical Group in February 2011 and reported her medication was adequate to control her anxiety, panic, and depression; the doctor switched her from one antidepressant to another. Earhart reported great improvement of her depression and anxiety symptoms on March 14, 2011. She switched doctors again on April 7, 2011 and told Dr. Lori Rumbaugh that her current psychiatric medication had helped the depression. On June 1, 2011, Earhart reported to Dr. Rumbaugh she was still having mood problems from stress caused by her husband's job situation.

Of these medical reports, the only one which described disabling symptoms was Earhart's psychiatric examination at Kaiser on December 14, 2014. The notes from her Kaiser eating disorder group, dated January 18 and 27, 2010, do not indicate severe symptoms, and Earhart stated she was more than 50 percent sure she was moving toward her goal. The remainder of Earhart's Kaiser chart notes through September 7, 2010 discuss her shoulder surgery and removal of a cyst on her skin but say nothing about psychiatric symptoms. There are no treatment records from any source until Earhart reported adequate control of psychiatric symptoms to Providence Medical Group in February 2011. Thus, the ALJ's reasoning that the husband's testimony was inconsistent with the preponderance of the medical record is supported by substantial evidence in the record. The ALJ did not err in discrediting the husband's testimony.

II.     Physicians' Opinions

Earhart argues the ALJ erred in rejecting the opinion of her treating psychologist, Dr. Sarah Samuelson, and in failing to consider the state agency psychologists' opinions of her ability to remain focused.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate

reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Turner, 613 F.3d at 1222. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (internal quotation omitted).

      A.     Dr. Sarah Samuelson

Dr. Sarah Samuelson, Earhart's treating psychologist from March 29, 2012 through the time of the hearing in June 2012, gave her opinion in a medical source statement dated June 12, 2012. According to Dr. Samuelson, Earhart required more than four hours of rest during an eight-hour work day due to fibromyalgia symptoms of pain, fatigue, sleep problems, weakness, headaches, hypoglycemia, stress, depression, anxiety, and cognitive impairments. Dr. Samuelson stated she could attest to the last four of these symptoms, but the others are based on Earhart's reports. Dr. Samuelson concluded Earhart had poor functioning in several areas: maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary tolerances; and completing a normal workday/workweek without interruptions from psychological symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. The form defined poor functioning as: "a substantial loss of ability to perform the named activity independently, appropriately, effectively and on a sustained basis in regular, competitive employment; and, at best, could do so only in a sheltered work setting *or* where special accommodations are provided." Tr. 480. Dr. Samuelson explained she had not observed Earhart functioning in these areas and based her assessment on Earhart's report. She opined Earhart had marked limitations in three areas: the activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace. Dr. Samuelson believed

Page 11 - OPINION AND ORDER

Earhart had four or more episodes of decompensation within the last year, each lasting at least two weeks, and would miss four or more days of work a month. Based on Earhart's report, Dr. Samuelson believed Earhart's condition had existed since April 14, 2009, but she noted their first meeting was March 29, 2012.

The ALJ gave little weight to Dr. Samuelson's opinion because it is based on Earhart's responses versus the objective provider's opinion.

Earhart claims Dr. Samuelson not only considered Earhart's allegations but made clinical observations of Earhart, understood Earhart's past traumas, and was aware of the interrelationships of Earhart's diagnosed conditions.

The Commissioner defends the ALJ's reasoning, observing Dr. Samuelson had to rely on Earhart's allegations because Dr. Samuelson did not treat Earhart until nearly four years after her alleged onset date.

I agree with the Commissioner–the relevant time frame is from April 14, 2009 through September 1, 2011, after which the ALJ found Earhart disabled. Dr. Samuelson did not examine Earhart until seven months after she was disabled, a fact the psychologist noted on the medical source statement. Thus, any opinion about Earhart's condition during the relevant time frame is based on Earhart's reports of her condition as long as three years earlier. This is a specific and legitimate reason to give little weight to Dr. Samuelson's opinion.

  B.  <u>State Agency Psychologists, Dr. Dorothy Anderson and Dr. Joshua Boyd</u>

Dr. Anderson completed a mental residual functional capacity assessment on March 26, 2010. She concluded Earhart was moderately limited: (1) in her ability to maintain attention and concentration for extended periods; and (2) her ability to complete a normal work-day and

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  She also stated:

> Claimant is able to maintain attention/concentration for simple tasks and routines, but will be easily overwhelmed by more complex tasks required on a consistent basis.  Ability to remain focused over a regular work day/week will be impacted by her occasional anxiety attacks, but these are not so frequent or severe as to completely disrupt work functioning.  No need for special supervision.  Able to maintain pace and schedule.

Tr. 306.

Neither this form nor the psychiatric review technique form Dr. Anderson completed define the term "occasional."  Dr. Boyd affirmed Dr. Anderson's opinion on October 26, 2010.

At the hearing, Earhart's attorney questioned the vocational expert:

> Q    If you had an individual whose ability to remain focused over a regular workweek or workday will be impacted by occasional–and social security defines occasional as up to a third of the work day–
>
> A    Yes.
>
> Q    –anxiety attacks would that impact a person's ability to perform the jobs that you've described[?]
>
> A    The anxiety attacks would occur occasionally in a workday?
>
> Q    Occasionally as defined by the Social Security Administration.
>
> A    No, that would not allow an individual to meet the work demands of an eight hour workday or a 40 hour workweek.  Occasional would reduce the pace, persistence, and attention to the job.  It would impact the sustainability of work.

Tr. 49.

Although the ALJ gave great weight to the opinions of the state agency psychologists, Drs. Anderson and Boyd, Earhart relies on the evidence quoted above to argue the ALJ failed to consider the psychologists' assessments of her limited ability to remain focused.

Page 13 - OPINION AND ORDER

The Commissioner claims Earhart's contention is based on an incomplete hypothetical presented to the vocational expert which misinterpreted the opinions of the psychologists.

"Occasionally" is defined in SSR 83-10 as occurring from very little up to one-third of the time. The term is used in the definition of sedentary work to describe the amount of time the person will be lifting or carrying particular items and the amount of time spent walking or standing. Thus, "occasionally" is a vocational term of art, not a medical term of art which Dr. Anderson would be trained to use. In light of Dr. Anderson's opinion that Earhart was only moderately limited, and not markedly limited, in her ability to maintain attention and concentration for extended periods and complete a normal work day, and Dr. Anderson's explanatory statement that Earhart could maintain pace and schedule, I interpret her phrase "occasional anxiety attacks" to use the normal English language definition of "occasional" and not the Social Security definition. A more usual definition of "occasional" is: "Occurring, encountered, done, or taken from time to time; irregular or infrequent." The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=occasional (last visited May 11, 2015).

Accordingly, the ALJ did not err by failing to include a limitation concerning Earhart's pace or ability to remain focused. Likewise, the hypothetical Earhart posed to the vocational expert is not supported by evidence in the record. The vocational expert's opinion about a claimant's residual functional capacity has no value if the assumptions in the hypothetical are not supported by medical evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).

> The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. Rather, the ALJ is free to accept or reject these restrictions . . . as long as they are supported by substantial evidence. This is true even where there is conflicting medical evidence. The limitation of evidence in a hypothetical question is objectionable only if the assumed facts could not be supported by the record.

Id. at 756-57 (citations and quotations omitted).

The ALJ committed no error associated with the opinions of the state agency psychologists.

III.     Subjective Symptom Testimony

Earhart testified to disabling pain, fatigue, depression, and anxiety. The ALJ concluded the evidence failed to support Earhart's claims of total disability caused by her physical and mental impairments.

Earhart contends the ALJ's errors in discrediting her husband's testimony and the opinions of her treating psychologist and state agency psychologists removed substantial corroboration of her subjective symptom testimony. Thus, she claims the ALJ erred in rejecting her testimony because he could not give proper consideration to the record as a whole when performing the credibility analysis.

This argument fails–I did not find the ALJ erred when considering Earhart's husband's testimony and the opinions of her treating psychologist and the state agency psychologists.

> In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.

Page 15 - OPINION AND ORDER

Molina, 674 F.3d at 1112 (internal quotations and citations omitted).

The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination, and the ALJ must rely on substantial evidence. Id.

Earhart argues the ALJ erred in not stating whether the medically determinable impairments he identified could reasonably be expected to produce her symptoms.

The ALJ stated:

> Despite the evidence demonstrating that the claimant has suffered from a medically determinable "severe" impairment, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associated with work. . . . [deletion of four sentences] The claimant does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

Tr. 494.

Although the ALJ did not provide the usual recitation of the boilerplate language, he continued on to the more important second step of the analysis and discussed the evidence. Any error is harmless.

The ALJ gave several reasons for discrediting Earhart. First, he noted the medical evidence, including the treatment notes and consultative examinations, does not entirely support her allegations. The ALJ reviewed in detail the opinions of the consulting medical doctor and psychologist, Dr. Clements and Dr. Stoltzfus, the opinions of the state agency doctors and psychologists, the treatment notes from Kaiser and the other medical clinics, the results of testing at the OHSU fibromyalgia clinic (including Earhart's statement that bupropion decreased her

fibromyalgia pain by 50%), and the treatment notes from Earhart's psychologist, Dr. Samuelson. The ALJ also provided a lengthy explanation of Earhart's allegations. As I described above when discussing the husband's lay testimony, the medical record does not support the severity of the symptoms Earhart alleges existed prior to the date on which the ALJ found her disabled, September 1, 2011. Contradiction with the medical record is a sufficient reason for rejecting a claimant's subjective testimony. Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). Thus, the inconsistency between the medical record and Earhart's testimony is a clear and convincing reason to discredit her.

Next, the ALJ briefly compared her activities with her allegations–he noted Earhart is quite sociable and is involved in a Bible study group and art group. This reasoning does not fare as well. Both groups meet weekly but Earhart only attends each about once every six weeks because of pain and exhaustion. Moreover, Earhart tries to attend church every week but had missed four out of the last six weeks prior to the hearing. The only fair interpretation of the record is that Earhart has greatly reduced her social activities. In addition, Earhart performs extremely minimal household chores. The extent of Earhart's daily activities is not a clear and convincing reason to discredit her.

The ALJ gave no other reasons to discredit Earhart. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). But, "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available

Page 17 - OPINION AND ORDER

objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2).

The ALJ erred in discrediting Earhart's subjective symptom testimony.

IV.     Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Under the credit-as-true rule, a court should remand to an ALJ with instructions to calculate and award benefits if three factors are satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The court has some flexibility in applying the credit-as-true rule, however, and can remand for further proceedings "when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021.

I see no useful purpose in remanding this case for further administrative proceedings. If I credit Earhart's testimony, she is clearly disabled as of the time she stopped working part-time. She engages in few activities either inside or outside her home. I also note Earhart's solid work history. A minimal work history prior to the alleged disability onset date can be a valid reason to discredit a claimant. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability"). The opposite is also true–a long, successful work history corroborates a claimant's allegations that he can no longer work. Curran-Kicksey v. Barnhart, 315 F.3d 964, 969-70 (8th Cir. 2003)

Page 18 - OPINION AND ORDER

(ALJ acknowledged claimant's strong work history tended to support the claimant's allegations of disability). Earhart had years of full-time employment. Earhart's supervisors at her last employer, the Oregon judicial department, attempted to find a position Earhart could still perform by giving her part-time hours, a flexible schedule, and transferring her to two different jobs with fewer responsibilities than in the position Earhart previously worked without problems. But she could not succeed. Moreover, the ALJ found Earhart disabled as of September 1, 2011. Based on the record, I move the disability onset date to April 14, 2009.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability as of April 14, 2009.

IT IS SO ORDERED.

Dated this      18th      day of May, 2015.

                         /s/ Garr M. King
                         Garr M. King
                         United States District Judge